UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

CASE NO.: 1:26-cv-1559

HDMI LICENSING ADMINISTRATOR, INC.,

     Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

     Defendants.

_____/

## COMPLAINT

Plaintiff, HDMI Licensing Administrator, Inc. ("HDMI LA"), by and through undersigned counsel, hereby sues Defendants, The Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto (collectively, the "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1. Defendants are promoting, selling, reproducing, offering for sale, and distributing goods using counterfeits and confusingly similar imitations of Plaintiff's trademarks within this district through various Internet-based e-commerce stores and fully interactive commercial Internet websites operating under the seller identification names set forth on Schedule "A" hereto (the "Seller IDs"). [1]

2. Like many other famous trademark owners, Plaintiff suffers ongoing daily and sustained violations of their trademark rights at the hands of counterfeiters and infringers, such as

---

[1] Plaintiff will be moving to file Schedule "A" under seal. A copy of the Schedule "A" will also be filed as part of Plaintiff's forthcoming *Ex Parte* application for a temporary restraining order.

Defendants herein, who wrongfully reproduce and counterfeit Plaintiff's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's trademarks, as well as the destruction of the legitimate market sector in which they operate.

3.      To combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, Plaintiff has expended significant amounts of resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet, particularly through online marketplace platforms, has created an environment that requires individuals, such as Plaintiff, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and themselves from the negative effects of confusion and the erosion of the goodwill connected to Plaintiff's brand.

## JURISDICTION AND VENUE

4.      This action seeks damages and injunctive relief for trademark counterfeiting and infringement, false designation of origin under the Lanham Act, common law unfair competition, common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), and 1125(d), and The All Writs Act, 28 U.S.C. § 1651(a); 15 U.S.C. § 1051 *et seq*.

5.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1114 and 1125(a), 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

6.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims, because the claims are so related to the trademark claims in this action, over which this

Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

7.     Defendants are subject to personal jurisdiction in this District because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Texas and this District through at least the Internet-based e-commerce stores and fully interactive commercial Internet websites accessible in Texas and operating under the Seller IDs.  Upon information and belief, Defendants infringe Plaintiff's trademarks in this District by advertising, using, selling, promoting and distributing counterfeit trademark goods through such Internet based e-commerce stores and fully interactive commercial Internet websites. Jurisdiction is also proper pursuant to Fed. R. Civ. P. 4(k)(2), the federal long-arm statute, because Defendants are all located and domiciled outside the United States, are not subject to and have not consented to general jurisdiction in any state's courts, and the exercise of jurisdiction over these Defendants would be consistent with the Constitution.

8.     Venue is proper in this District pursuant 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens engaged in infringing activities and causing harm within this District by advertising, offering to sell, selling and/or shipping infringing products into this District.  Defendants may be found in this District, as they are subject to personal jurisdiction herein.

## THE PLAINTIFF

9.     Plaintiff is a California corporation having its principal place of business in San Jose, California.

10.     Plaintiff is the owner of all rights, title, and interest in the HDMI standard character mark and related logos (collectively, the "HDMI Marks").

11.    High-quality products under the HDMI Marks are designed, manufactured, marketed, and distributed in interstate commerce, including within this judicial district.

12.    HDMI LA provides a nondiscriminatory, nontransferable, non-sublicensable worldwide license to entities who choose to implement the HDMI technology, including cable, component, connector, repeater, source and sink products ("Licensed Products"), as defined in the High-Definition Multimedia Interface Specification (the "HDMI Specification") Adopter Agreement (the "Agreement") solely in connection with Licensed Products.

13.    HDMI LA was founded by a collection of leading consumer electronics manufacturers (the "Founders") including Maxell, Ltd., a corporation of Japan, having a principal place of business in Kyoto, Japan, Panasonic Holdings Corporation, a corporation of Japan, having a principal place of business in Osaka, Japan, Koninklijke Philips, NV., a corporation of The Netherlands, having a principal place of business in Amsterdam, The Netherlands, Lattice Semiconductor Corporation, a Delaware corporation having a principal place of business in Hillsboro, Oregon, USA, Sony Group Corporation, a corporation of Japan, having a principal place of business in Tokyo, Japan, Vantiva S.A., a French corporation, having its principal place of business in Paris, France, and Toshiba Corporation, a corporation of Japan, having a principal place of business in Kanagawa, Japan, and includes each of their Affiliates. The Founders are some of the largest and most successful companies in the audio/visual technology space. The Founders collaborated beginning in the early 2000s to create a unified, digital audio-visual interface capable of transmitting high-quality video and audio over a single cable between source devices and display equipment. Each Founder contributed patented technologies, technical expertise, and industry leadership necessary to establish the HDMI technology as a successor to legacy analog and early digital connection standards. HDMI LA licensees include major technology, consumer

electronics, semiconductor, and content-protection companies that support, implement, and promote the HDMI standard but do not own the core HDMI intellectual property, including Samsung Electronics, LG Electronics, Intel Corporation, Microsoft Corporation, Apple Inc., NVIDIA Corporation, AMD, Broadcom Inc., MediaTek, Qualcomm Incorporated.  HDMI LA has licensed the Adopted Trademarks to over 2,000 business partners (the "HDMI Adopters") who have collectively produced and sold billions of products under the HDMI Specification since its launch in 2002.

14.     HDMI LA, located in the United States, is the Agent appointed by the Founders to license the 1.x HDMI Specification and is the rights holder to numerous worldwide registrations. One responsibility of HDMI LA is to preserve and protect the integrity of the HDMI Marks, associated with the HDMI Specification. The HDMI Marks serve as an exclusive source identifier, appearing on Licensed Products throughout the world. The HDMI Marks convey to consumers that these products comply with the technical elements of the HDMI Specification and have successfully completed testing to certify seamless interoperation with other Licensed Products bearing the HDMI Marks.

## THE DEFENDANTS

15.     Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendants target their business activities towards consumers throughout the United States, including within this district through

5

the operation of Internet-based e-commerce stores via Internet marketplace websites under the Seller IDs.

16.    Defendants are the past and present controlling forces behind the sale of products under counterfeits and infringements of Plaintiff's trademarks as described herein using at least the Seller IDs.

17.    Upon information and belief, Defendants directly engage in unfair competition by advertising, offering for sale, and selling goods bearing one or more of Plaintiff's trademarks to consumers within the United States and this District through Internet-based e-commerce stores using, at least, the Seller IDs and additional seller identification aliases and domain names not yet known to Plaintiff.  Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Texas through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

18.    Defendants have registered, established or purchased, and maintained their Seller IDs.  Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs.

19.    Upon information and belief, some Defendants have registered and/or maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

20.    Upon information and belief, Defendants will continue to register or acquire new seller identification aliases and domain names for the purpose of selling and offering for sale goods bearing counterfeit and confusingly similar imitations of one or more of Plaintiff's trademarks unless preliminarily and permanently enjoined.

21.    Defendants use their Internet-based businesses in order to infringe the intellectual property rights of Plaintiff.

6

22.     Defendants' business names, *i.e.*, the Seller IDs, associated payment accounts, and any other alias seller identification names used in connection with the sale of counterfeit and infringing goods bearing one or more of Plaintiff's trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff.  Moreover, Defendants are using Plaintiff's famous trademarks to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

## GENERAL FACTUAL ALLEGATIONS

### *Plaintiff's Intellectual Property Rights*

23.     Plaintiff is the owner of the following trademark registrations, which are valid and registered on the Principal Register of the United States Patent and Trademark Office, and pending applications for trademark registration on the Principal Register (*i.e.*, the HDMI Marks):

| | | |
|---|---|---|
| HƏMI HIGH SPEED | 4124681 | IC 009: cables. |
| HƏMI HIGH SPEED with ETHERNET | 4117692 | IC 009: cables. |

7

| | 4124682 | IC 009: cables. |
|---|---|---|
| HƆMI STANDARD | | |
| | 7852153 | IC 009: Cable connectors; Electric cables; electronics cables; telecommunications cables; connection cables; data cables; audio and video cables; Integrated circuits and semiconductors; recorded computer software for use as an interface between audio/video sources and audio/video repeater devices; recorded computer software for use as an interface between audio/video sources and audio/video monitors; recorded computer software interface for use in connecting, controlling and networking a wide variety of computer and communications hardware, consumer electronic devices, components, and peripherals; recorded computer software for controlling the operation of audio and video devices; computer hardware and peripherals; computer monitors; electric switches; telecommunications switches; television transmitters and receivers; satellite television receiving apparatus video recorders; audio-receivers, video-receivers and audio-video receivers; televisions; television monitors; computers; digital video recorders; video disc players; liquid crystal display (LCD) monitors; digital media streaming devices; television and video converters; cameras; computer |

| | | |
|---|---|---|
| | | hardware, namely, wireless network repeaters; telecommunications equipment, namely, fiber optic repeaters; ethernet repeaters; transceivers; telecommunications equipment, namely, converters and optimizers; cable extenders, namely, connection cables for use as extenders. |
| | 7108714 | IC 035: Association services, namely, promoting the development and adoption of a voluntary digital interface specification that provides an interoperable method of connecting computer and communications hardware, consumer electronics devices, components, and peripherals; promoting the goods and services of others by conducting and administering a compliance program to recognize and promote system integrators and companies that sell certain technology compliant products; promoting the goods and services of others by conducting and administering a compliance program for participating members featuring tools, information, and opportunities to help members establish credibility, drive visibility, increase brand awareness and protect goodwill and reputation; promoting the goods and services of others by conducting and administering a compliance program for participating members featuring a searchable database that includes member product information, product specifications, and product images; marketing and promotion services and related |

| | | consulting; providing an online searchable database featuring consumer and business information in the fields of consumer electronics, telecommunications equipment, and computer hardware |
|---|---|---|
| **PREMIUM HDMI CABLE CERTIFICATION PROGRAM** | 5286812 | IC 042: Scientific and technological services and research and design relating thereto, all in the field of authenticating products that are used to transmit high-performance digital audio and video content; industrial analysis and research services, all in the field of authenticating products that are used to deliver high-performance digital audio and video content; design and development of computer hardware and software; product testing; testing, analysis and evaluation of the goods of others to determine conformity with certification standards; testing, analysis, and evaluation of the goods of others to assure compliance with industry standards; development and establishment of testing specifications and procedures in the field of high-definition and wireless audio and video standards; testing, analysis, and evaluation of the goods of others to assure compliance with high-definition and wireless audio and video industry standards; technical consultation services in the field of high-definition and wireless audio and video standards; testing, analysis, and evaluation of the goods of others to assure compliance with high-definition and wireless audio and video industry standards; technical |

10

| | | |
|---|---|---|
| | | consultation services in the field of engineering; technical consultation services in the field of high-definition and wireless audio and video industry standards; authentication services in the field of devices used to transmit high-performance digital audio and video content; authentication services in the field of cables; design and implementation of software and technology solutions for the purpose of product authentication and tracking, and brand monitoring and protection, to protect against counterfeiting, tampering, and diversion, and to ensure the integrity of genuine products |
| PREMIUM HIGH SPEED HDMI CABLE WITH ETHERNET | 5142621 | IC 009: Cables, namely, electronic cables, audio/video cables, and electronic or telecommunications digital cables. |
| PREMIUM HIGH SPEED HDMI CABLE | 5286833 | IC 009: Cables, namely, electronic cables, audio/video cables, and electronic or telecommunications digital cables. |
| | 5453929 | IC 009: cables, namely, electronic cables, audio/video cables, and electronic or telecommunications digital cables. |

| | 5205499 | IC 009: Cables, namely, electronic cables, audio/video cables, and electronic or telecommunications digital cables. |
|---|---|---|
| PREMIUM HDMI CABLE | 5286835 | IC 009: Cables, namely, electronic cables, audio/video cables, and electronic or telecommunications digital cables. |
| HDMI | 6951567 | IC 035: Promoting the goods and services of others by conducting and administering a compliance program to recognize and promote resellers, system integrators, specialty retailers, and companies that sell certain technology compliant products; promoting the goods and services of others by conducting and administering a compliance program for participating members featuring tools, information, and opportunities to help members establish credibility, drive visibility, increase brand awareness and protect goodwill and reputation; promoting the goods and services of others by conducting and administering a compliance program for participating members to develop greater visibility and recognition among retailers, installers, and consumers; Association services, namely, promoting the |

| | | |
|---|---|---|
| | | development and adoption of a voluntary digital interface specification that provides an interoperable method of connecting computer and communications hardware, consumer electronics devices, components, and peripherals |
| **HDMI** | 7116554 | IC 042: Scientific and technological services and research and design relating thereto, all in the field of authenticating products that are used to transmit high-performance digital audio and video content; industrial analysis and research services, all in the field of authenticating products that are used to deliver high-performance digital audio and video content; design and development of computer hardware; product testing; testing, analysis and evaluation of the goods of others to determine conformity with certification standards; testing, analysis, and evaluation of the goods of others to assure compliance with industry standards; development and establishment of testing specifications and procedures in the field of high-definition and wireless audio and video standards; technical consultation services in the field of engineering; technical consultation services in the field of high-definition and wireless audio and video industry standards; authentication services in the field high-definition and wireless audio and video industry standards; authentication services in the field of devices used to transmit high-performance digital |

13

| | | audio and video content; authentication services in the field of cables; design and implementation of technology solutions for the purpose of product authentication and tracking, and brand monitoring and protection, to protect against counterfeiting, tampering, and diversion, and to ensure the integrity of genuine products; testing, analysis and evaluation of the goods of others for the purpose of certification; Development and establishment of testing specifications and procedures in the field of digital video, audio, and data interfaces; authentication services in the fields of digital video, audio, and data interfaces |
|---|---|---|
| **HƆMI** | 7138628 | IC 009: Cable connectors; electronic connectors; electric cables and components thereof; electronics cables and components thereof; telecommunications cables and components thereof; connection cables and components thereof; data cables and components thereof; audio and video cables and components thereof; integrated circuits and semiconductors; recorded computer software for use as an interface between audio/video sources and audio/video repeater devices; recorded computer software for use as an interface between audio/video sources and audio/video monitors; recorded computer software interface for use in connecting, controlling and networking a wide variety of computer and communications hardware, consumer electronic devices, components, and |

| | | |
|---|---|---|
| | | peripherals; recorded computer software for controlling the operation of audio and video devices; computer hardware and peripherals; computer monitors; electric switches; telecommunications switches; television transmitters and receivers;... |
| HDMI | 7138629 | IC 035: Cable connectors; electronic connectors; electric cables and components thereof; electronics cables and components thereof; telecommunications cables and components thereof; connection cables and components thereof; data cables and components thereof; audio and video cables and components thereof; integrated circuits and semiconductors; recorded computer software for use as an interface between audio/video sources and audio/video repeater devices; recorded computer software for use as an interface between audio/video sources and audio/video monitors; recorded computer software interface for use in connecting, controlling and networking a wide variety of computer and communications hardware, consumer electronic devices, components, and peripherals; recorded computer software for controlling the operation of audio and video devices; computer hardware and peripherals; computer monitors; electric switches; telecommunications switches; television transmitters and receivers; satellite television receiving apparatus; video recorders; audio- receivers, video-receivers and audio-video |

| | | |
|---|---|---|
| | | receivers; televisions; television monitors; computers; video recorders; video disc players; liquid crystal display (lcd) monitors; digital media streaming devices; television and video converters; cameras; computer hardware, namely, wireless network repeaters; telecommunications equipment, namely, fiber optic repeaters; ethernet repeaters; transceivers; telecommunications equipment, namely, converters and optimizers; cable extenders, namely, connection cables for use as extenders; cable modems; Gateway routers in the nature of computer control hardware; set-top boxes; cable boxes |
| HDMI HIGH-DEFINITION MULTIMEDIA INTERFACE | 7139241 | IC 035: Association services, namely, promoting the development and adoption of a voluntary digital interface specification that provides an interoperable method of connecting computer and communications hardware, consumer electronics devices, components, and peripherals; Promoting the goods and services of others by conducting and administering a compliance program to recognize and promote resellers, system integrators, specialty retailers, and companies that sell certain technology compliant products; promoting the goods and services of others by conducting and administering a compliance program for participating members featuring tools, information, and opportunities to help members establish credibility, drive visibility, increase brand |

16

| | | awareness and protect goodwill and reputation; promoting the goods and services of others by conducting and administering a compliance program for participating members to develop greater visibility and recognition among retailers, installers, and consumers |
| --- | --- | --- |

24.     The HDMI Marks are used in connection with the design, manufacturing, marketing, and distribution of high-quality goods in at least the categories identified above.

25.     Long before Defendants began their infringing activities complained of herein, the HDMI Marks had been used by Plaintiff in interstate commerce to identify and distinguish Plaintiff's products and merchandise for an extended period.

26.     The HDMI Marks are well-known and famous and have been for many years in the United States and worldwide.  Plaintiff has expended substantial time, money, and other resources developing, enforced, and otherwise promoting the HDMI Marks and products bearing the HDMI Marks.  The HDMI Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

27.     Plaintiff has extensively used, enforced, and promoted the HDMI Marks  in the United States in association with their merchandise.

28.     As a result of Plaintiff's efforts, members of the consuming public readily identify products and merchandise bearing or sold under the HDMI Marks as being high quality goods sponsored and approved by Plaintiff.

29.     The HDMI Marks serve as a symbol of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

17

*Defendants' Counterfeiting and Infringing Conduct*

30.    Upon information and belief, Defendants are promoting and advertising, distributing, selling, and/or offering for sale counterfeit and/or infringing goods in interstate commerce using exact copies and confusingly similar copies of the HDMI Marks through at least the Internet-based e-commerce stores operating under the Seller IDs (collectively, the "Counterfeit Goods"). Plaintiff has used the HDMI Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

31.    Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially and materially different than that of Plaintiff's genuine goods. Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with knowledge and intent that such goods will be mistaken for the genuine high quality goods offered for sale by Plaintiff under the HDMI Marks despite Defendants' knowledge that they are without authority to use the HDMI Marks. The effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, or approved by Plaintiff.

32.    Joinder of the Defendants in this action pursuant to Fed. R. Civ. P. 20 is appropriate, at least initially, because each Defendants' infringing and unlawful conduct arises out of the same transaction, occurrence, or series of transactions or occurrences, and Plaintiff's claims against each Defendant shares common questions of law and fact. Specifically, each Defendant: a) is selling the same or highly similar infringing products; b) is operating from the same geographic region of the same foreign country and, consequentially, is likely sourcing its products from a common source; c) is operating its storefront on the same online platform; d) uses similar marketing and

advertising language and techniques, often copying images and/or text identically; and e) uses identical, generic descriptions to describe its storefront consistent with foreign counterfeiting activity rather than legitimate business.[2] These facts consistute a logical relationship between these Defendants rendering joinder appropriate under Rule 20. Additionally, Defendants' collectively advertise their Counterfeit Goods for sale to the consuming public as an indivisible "swarm" harming Plaintiff consistutes a common series of transactions or occurrences within he meaning of Rule 20. Thus, upon information and belief, Defendants are commonly owned or controlled, or at least working together in furtherance of their infringing activity.

33.    As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the HDMI Marks. Specifically, Defendants are using counterfeits and infringements of Plaintiff's famous HDMI Marks to make their e-commerce stores and websites selling illegal goods appear more relevant, authentic, and attractive to consumers searching for Plaintiff's related goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the goodwill

---

[2] Plaintiff's joinder allegations are further detailed in Plaintiff's *Ex Parte* Motion for Temporary Restraining Order, filed concurrently herewith under seal.

associated with the HDMI Marks, and/or (iii) increasing Plaintiff's overall cost to market the HDMI Marks and educate consumers about their brand via the Internet.

34.    Upon information and belief, Defendants are concurrently targeting their counterfeiting and infringing activities toward consumers and causing harm within this District and elsewhere throughout the United States.  As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

35.    Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the HDMI Marks, including their exclusive right to use and license such intellectual property and the goodwill associated therewith.

36.    Defendants' use of the HDMI Marks, including the promotion and advertisement, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

37.    Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.  If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

38.    Defendants' above-identified-infringing-activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

20

39.    Upon information and belief, Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their Seller IDs and any other alias seller identification names being used and/or controlled by them.

40.    Further, upon information and belief, Defendants are likely to transfer or conceal their assets to avoid payment of any monetary judgment awarded to Plaintiff.

41.    Plaintiff has no adequate remedy at law.

42.    Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the HDMI Marks.

43.    The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

### COUNT I -- TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

44.    Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 43 as though fully set forth herein.

45.    This action is for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the HDMI Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

46.    Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods, using counterfeits and/or infringements of the HDMI Marks.  Defendants are continuously infringing and inducing others to infringe the HDMI Marks  by using one or more of them to advertise, promote, offer to sell, and/or sell at least counterfeit and/or infringing goods.

47.   Defendants' concurrent counterfeiting and/or infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

48.   Defendants' unlawful actions have individually and jointly caused and are continuing to cause unquantifiable damage to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

49.   Defendants' above-described illegal actions constitute counterfeiting and infringement of the HDMI Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

50.   Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described-activities if Defendants are not preliminarily and permanently enjoined.  Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II -- FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(A) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

51.   Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 43 as though fully set forth herein.

52.   Upon information and belief, Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of the HDMI Marks  have been widely advertised and offered for sale throughout the United States via the Internet.

53.   Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of the HDMI Marks are virtually identical in appearance to Plaintiff's genuine goods.  However, Defendants' Counterfeit Goods are different in quality.  Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

22

54.     Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

55.     Defendants have authorized infringing uses of the HDMI Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.  Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

56.     Additionally, Defendants are using counterfeits and infringements of the HDMI Marks  in order to unfairly compete with Plaintiff and others for space within search engine organic results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the World Wide Web.

57.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

58.     Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III -- COMMON LAW UNFAIR COMPETITION

59.    Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 43 as though fully set forth herein.

60.    This action is against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods using marks which are virtually identical, both visually and phonetically, to the HDMI Marks in violation of Texas' common law of unfair competition.

61.    Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing counterfeits and infringements of the HDMI Marks. Defendants are also using counterfeits and infringements of the HDMI Marks to unfairly compete with Plaintiff for (i) space in search engine results across an array of search terms and/or (ii) visibility on the World Wide Web.

62.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of the HDMI Marks.

63.    Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

64.    Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 43 as though fully set forth herein.

65.    This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing the HDMI Marks.  Plaintiff is the owner of all common law rights in and to the HDMI Marks.

24

66.     Specifically, Defendants, upon information and belief, are promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of the HDMI Marks.

67.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the HDMI Marks.

68.     Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

A.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the HDMI Marks; from using the HDMI Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any

way endorsed by, approved by, and/or associated with Plaintiff; from using any counterfeit, copy, or colorable imitation of the HDMI Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff's, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's HDMI Marks; and from otherwise unfairly competing with Plaintiff.

B.　　Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court disable and/or cease facilitating access to the Seller IDs, and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the HDMI Marks.

C.　　Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' respective Seller ID.

D.　　Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court

permanently remove any and all listings and associated images of goods bearing counterfeits and/or infringements of the HDMI Marks via the e-commerce stores operating under the Seller IDs, and upon Plaintiff's request, any other listings and images of goods bearing counterfeits and/or infringements of the HDMI Marks  associated with and/or linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the HDMI Marks.

E.      Entry of an order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant in the amount of two million US dollars ($2,000,000.00) per each counterfeit trademark used and product type sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

F.      Entry of an order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other alias seller identification or e-commerce store names, domain names and/or websites used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

G.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

H.      Entry of an order requiring Defendants to pay prejudgment interest according to law.

I.      Entry of an order for such other and further relief as the Court may deem proper and just.

Date:   June 10, 2026                                    Respectfully submitted by,

                                                        **THE BRICKELL IP GROUP, PLLC**
                                                        1101 Brickell Avenue
                                                        South Tower, Suite 800
                                                        Miami FL, 33131
                                                        Tel: 305-728-8831
                                                        Fax: 305-428-2450

                                                        */s/ A. Robert Weaver*
                                                        A. Robert Weaver
                                                        Fla. Bar No. 92132
                                                        Email: rweaver@brickellip.com

                                                        *Counsel for Plaintiff*